# Commonwealth ex rel. Eberhardt, Appellant, *v.* Dalzell et al.

*Corporations—Right to vote stock—Pledge of stock.*

At common law the right to vote stock, as between the corporation and the person offering to vote, follows the legal title of which the certificates and the stock books are prima facie evidence.

Where stock is pledged as collateral security, whether the debtor or creditor shall have the right to vote the stock depends upon the terms on which the pledge is made; and, in the absence of any agreement on this point, it would seem that the right to vote should follow the legal title.

The by-laws of a corporation provided that all persons holding shares, "either in their own right or as trustees," shall have the right to vote. Two persons held the title to stock which was entered on the corporation books in their names as trustees. It was admitted that they were pledgees and it did not appear that the pledgors had reserved the right to vote.

*Held,* that both by the common law and the corporate by-laws they were entitled to vote the stock.

*Right to vote under act of May* 7, 1889.

The act of May 7, 1889, P. L. 102, which provides that the judges of the election shall determine summarily whether the name on the books is that of the absolute and bona fide owner thereof, or of a holder of the same as executor, administrator, guardian, or as trustee created by last will and testament, or by decree of court, and if not the vote should be rejected, does not apply to the case of a pledge with no express agreement as to the voting power, and such a case must be decided in accordance with common law.

It seems that the enumeration of owners and trustees in the act of May 7, 1889, is not meant to be exhaustive, and exclusive, and to make mandatory the direction to reject all other votes.

Argued Nov. 5, 1892. Appeal, No. 215, Oct. T., 1892, by plaintiff, from order of C. P. No. 2, Allegheny Co., July T., 1892, No. 410, overruling demurrer. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Petition for alternative writ of quo warranto, to determine whether J. H. Dalzell, C. L. Magee, Joshua Rhodes, George B. Hill and Fred. Gwinner were entitled to act as directors of the Pittsburgh, Allegheny & Manchester Traction Company.

From the petition it appeared that at a meeting of the stockholders of the said company held on May 16, 1892, the five respondents were declared elected to the position of directors. One of the candidates for the office of director was the relator, William Eberhardt, who, by proxies under seal, claimed the right to vote stock, held by Watson and Wood as trustees, and so registered in the stock book of the corporation. The votes were rejected. If they had been received relator would have had more votes than defendants. Further facts appear by the opinion of the Supreme Court.

The case was heard upon petition setting out these facts and demurrer to answer. The answer denied the right to vote the stock in question. The court overruled the demurrer, and entered judgment for defendants, in an opinion by EWING, P. J., 1 Dist. R. 657.

*Errors assigned* were (1) overruling demurrer and entering judgment for defendants; (2) not entering judgment of ouster; (3) not declaring relator duly elected director.

*John D. Brown, Thomas M. Brown* with him, for appellant.—As against the corporation, its stockholders and creditors, the right to vote stock is fixed in the party in whose name the stock stands registered on the books of the company, or the holder of its certificates duly issued : Lowell, Transfer of Stock, § 28; Spelling, Private Corporations, § 380 ; Morawetz, Private Corporations, §§ 159, 483 ; Cook, Stock and Stockholders, etc., § 247.  In this respect, the first section of the act of May 7, 1889, P. L. 102, is merely declaratory of the law as it stood before that act was passed.

The apparent owner and registered holder may, in fact, occupy a trust relation, through which his right to vote may be qualified and controlled.  Such questions, however, are purely between the parties, the nominal owner or trustee and the real or beneficial owner.  With these questions, the corporation, as such, has nothing to do : Willcock's Case, 7 Cow. 402, 410, 411 ; McHenry v. Jewett, 90 N. Y. 58; McHenry v. Jewett, 26 Hun, 453 ; Vail v. Hamilton, 85 N. Y. 453 ; Tunis v. Hestonville, Mantua & Fairmount Passenger R. R., 30 W. N. 96 ; Shelmerdine v. Welsh, 47 Leg. Int. 26 ; Morawetz, Private Corporations, § 483 ; 2 Beach on Corporations, § 855 and notes, particularly at page 1346, et seq., and note 3, same page ; also page 1347 and note 4.  Subject to reasonable rules and regulations of the corporation respecting the right to vote, the question is purely between the parties interested in the stock to be voted : Shelmerdine v. Welsh, supra ; Tunis v. Hestonville, etc. R. R., supra, and cases cited above ; 2 Beach on Corporations, § 855.

The act of May 7, 1889, P. L. 102, must be construed as intending that which is just, and not to abridge vested rights and interests.  It was passed to prevent the voting of stock wrongfully by one having an apparent right to vote it, though, in fact, against the real owner's wishes or in violation of a trust relation.

Appellees' construction would render the act unconstitutional as impairing vested rights : Morawetz, § 1059.

*A. M. Neeper, F. M. Magee* with him, for appellee.—The act of May 7, 1889, will control the validity of the by-law and the determination of the right to vote the stock in the names of Mark

W. Watson and John T. Woods, trustees. The act of 1883 makes the certificates and transfer books of corporations prima facie evidence of stock ownership, but it is submitted that the registry of the stock must be of such certainty as to describing the capacity in which the registered holder holds the stock as to bring him within the provisions of the act: Nichols v. Haynes, 78 Pa. 177 ; Corr v. Sellers, 100 Pa. 169.

The registry in the case of Messrs. Woods and Watson shows that they were the holders of the stock as trustees generally. There is nothing on the registry to indicate that they are within the classes enumerated in the act of May 7, 1889.

Pledgees have no property in stock deposited with them. They have merely the right of possession of the same, with privilege, when the debt for which the same is pledged is due, to call upon the pledgor to redeem, and in case of failure so to do to sell the pledge and apply the proceeds of the sale to his debt: Sitgreaves v. Bank, 49 Pa. 359; Diller v. Brubecker, 52 Pa. 502.

The act of May 7, 1889, clearly indicates that the intention is to confine the right to vote in the trustees enumerated, and in any event to exclude pledgees: Appeal of Academy of Music, 108 Pa. 510.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1893 :

The right of voting stock at corporate elections is an incident of ownership, to be exercised, of course, in the mode and under the restrictions prescribed by the charter and by-laws ; but nevertheless a part of the stockholder's property, inherent in him by virtue of his title. As said by the present Chief Justice in Tunis v. Hestonville R. W. Co., 30 W. N. 96, " the right of voting stock is inseparable from the right of ownership. The one follows as a sequence from the other, and the right to vote cannot be separated from the ownership without the consent of the legal owner." But though the person who votes must be an owner, " it does not follow that he must be the only one. If, for instance, stock is pledged as a collateral, whether the debtor or creditor shall vote depends on the terms on which the pledge is made. The power is, under these circumstances, necessarily to some extent severed from the ownership, and the parties may consequently determine on which

side it shall lie : " HARE, P. J., Shelmerdine v. Welsh, 47 Leg. Int. 26. In the absence of any agreement between the parties on this point, it would seem that the right to vote should follow the legal title. If that was allowed to remain in the pledgor his right to vote could not be questioned, while, on the other hand, if the legal title was transferred to the pledgee, his prima facie right would be equally clear. It was held in Aultman's Appeal, 98 Pa. 505 (516), that the pledgee of stock as collateral transferred and standing in his name, is as to the corporation the legal owner, and liable for assessments, etc., just as if he was the actual beneficial owner. If he is thus charged with the burdens of ownership, it would seem to follow that he is entitled to the corresponding rights and privileges.

These being the rights of the parties under the common law, we have now to consider the effect upon them of the act of May 7, 1889, P. L. 102. It is entitled " An act defining evidence of stock ownership in corporations and for determining the right to vote thereon," and begins by declaring that " the certificate of stock and transfer books, or either, . . . . shall be prima facie evidence of the right to vote thereon, by the person named therein as the owner." So far this is merely declaratory of the existing law, but it then proceeds, that upon objection by an actual stockholder, the judges of the election shall inquire and determine summarily whether the name on the books is " that of the absolute and bona fide owner thereof, or of a holder of the same as executor, administrator, guardian, or as trustee created by last will and testament, or by decree of court. If not, then the vote or votes so tendered shall be rejected." The critical question that arises on the first glance at this act is whether the enumeration of owners and trustees is meant to be exhaustive and exclusive, and the direction to reject all other votes mandatory. It is at once apparent that this direction cannot be taken literally without consequences of the most sweeping and dangerous character. Whole classes of stockholders, whose rights are as indisputable as any of those named, would be disfranchised. Thus no trustee, unless created by will or decree of court, is to have his vote received, and the whole class of trustees under deeds, however carefully framed for the protection of the separate

estates of married women, or the management of estates during minority, lunacy, insolvency, or spendthrift lives, and trustees of the funds of public or private charities which may have corporate stock among their investments, would be entirely excluded from any vote in the management of the property committed to their charge, and it is doubtful if any partner, manager of a limited or joint stock company, or officer of a corporation holding stock of other corporations, could be brought under the literal description of " absolute and bona fide owner," while they are certainly not trustees created by will or by decree of court. The rights in all these cases are as unquestionable, as absolute, and as much entitled to exercise and protection as any of those expressly named in the act. It is not supposable that the legislature, even if it could do so constitutionally, meant to strike them down in this indirect and summary way. They are rights of property, and can only be taken away, if at all, by the clearest and most imperative language. The statute is very loosely and improvidently drawn, and there is no construction of it entirely free from difficulty; but it is far more reasonable to suppose that the legislature had another and different intent. Corporate interests had grown so large, and the conflict of opposing views of internal management at times so violent, that elections not unfrequently became matters of public concern. Our recent reports show a number of appeals to the equitable powers of the courts not only to decide questions of voting rights, but to take entire charge of corporate elections. One such, involving enormous amounts of capital, and great public interests, came to this court in Gowen's Appeal, 10 Weekly Notes, 85. Corporate elections cannot be stopped to settle nice questions of legal title, and it is important to the interests of the corporations that their elections should proceed under their own rules and with their own officers. This statute appears to us as an outgrowth of that state of affairs, an effort in the direction of regular and orderly elections, to afford means of speedy and present determination of questions of voting as they arise, and as they may affect the interests of the corporations, a directory establishment of the prima facies in the enumerated cases, for the guidance of the election officers, but not intended to interfere with the privileges of individual owners, or the by-laws of corporations, and certainly not to take

away or settle finally any legal rights. The enumeration of executors, administrators, guardians, and trustees created by will or by decree of court, was in pursuance of this purpose, and was meant to afford a general prima facie rule for such cases. That the existence of other trustees, not within the classes named, was not meant to be disregarded, appears by the second section, which prescribes that when a pledgor of stock as collateral for a debt has reserved the right to vote upon it, his vote shall be received. This also is only declaratory of the law as it stood before. But the case of a pledge with no express agreement as to the voting power, was not provided for. Whether this was merely through inadvertence or purposely, because questions of much nicety may arise in such cases, where rights will be dependent on the exact circumstances, it is not material to inquire. The act makes no express provision for such cases, and they must be decided upon the common law. The general rule is that as between the corporation and the person offering to vote, the right follows the legal title, of which the certificates and the stock books are the prima facie evidence. By-laws may establish a different rule, and there may be special circumstances to change the equities as to individuals or even as to the corporation: See Morawetz on Corporations, and the cases cited, § 483; Biddle on Stock Brokers, 342; Spelling on Private Corporations, § 380; Beach on Private Corporations, § 855; and some cases taking a contrary view, cited in Cook on Stock and Corporation Law, ed. 1889, § 468. But we have no question of that kind in the present case. The by-laws of the corporation provide that all persons holding shares " either in their own right, or as trustees," shall have the right to vote. In this there is no restriction as to the kind of trustees or the mode or purpose of their appointment as such. It is admitted that Messrs. Watson and Wood held the title to the stock which was entered on the corporation books in their names as trustees. It is also admitted that they were pledgees, but it does not appear that the pledgors had reserved the right to vote. Both by the common law and the corporate by-laws, therefore, they were entitled to vote. It was a right of property incident to their legal title to the stock, and the declaratory and directory provisions of the statute did not take it away. Their votes should have been received and counted.

The result of counting these votes, as appears, will be that the election was incomplete and abortive as to the four vacancies for which five candidates received equal votes.   Whether the by-laws provide in any way for such a contingency, or for a special election to supply the failure, or the difficulty can be arranged by the withdrawal of one of the candidates or in some other way, we are not informed.   We cannot, therefore, enter a final decree, but must send the case back for further proceedings.

Decree reversed, and record remitted for further proceedings in accordance with this opinion.