## American Foundry and Pipe Company v. Taylor et al.

*Equity—Contest between rival claimants to the office of director of a corporation—Jurisdiction—Act of June 14, 1836.*

1. The general rule is that equity will not interfere in a contest involving the possession of property except where the right of the complainant is clear or is admitted, or has been adjudicated on the law side of the court.

2. A bill in equity to compel the surrender of the property of a corporation cannot be sustained where it appears that the real question in controversy is the validity of the election of the defendants as officers of the corporation. In such a case *quo warranto* is the appropriate remedy.

3. The power of supervision and control of corporations conferred by the Act of June 14, 1836, P. L. 621, upon courts of equity will be used to supervise and control corporate elections where it is shown in advance that, by reason of fraud, violence or other unlawful means, a fair and honest election cannot be held, but it will not be exercised to set aside an election regularly held.

4. Where a corporation election is held at the proper place and the appointed time, and the meeting is regular, quiet and orderly, the only way to contest the validity of the election is by a writ of *quo warranto*, as provided by law.

Motion to continue preliminary injunction.   C. P. Westmoreland Co., No. 1153, in Equity.

*Lewis C. Walkinshaw,* for plaintiff.

*Taylor & Taylor* and *Crowell & Whitehead,* for defendants.

WHITTEN, J., March 23, 1923.—This cause came before the court upon plaintiff's motion to continue, and defendants' motion to dissolve, the preliminary injunction granted March 12, 1923.

The plaintiff's bill alleges, *inter alia,* that the defendants "did on March 12, 1923, . . . without lawful authority, enter in and upon the premises of your orator, and particularly of the office and foundry, take possession of the same, break open the safe and desk, seize the papers, books, check book and other

4 D. & C.

American Foundry and Pipe Company v. Taylor et al.

property of the company with an intent and design to injure and interfere with the orderly conduct of the business of said company; . . . has prevented the operation of its plant, . . . attempted to interfere with the collection of bills. . . . All of which is without any authority and direction of the board of directors of said company." Said bill also avers that the defendants, after entering upon the plaintiff's premises, continue sundry acts "to exclude your orator's officers from the use thereof and access thereto, and threaten permanently to hold possession thereof."

In other words, this bill is filed in the name of the American Foundry and Pipe Company, a corporation, alleging unlawful trespasses upon its property and threats permanently to exclude the plaintiff corporation from its property—all carried on by persons who had no right in the premises of the plaintiff company.

Upon the hearing, it was not established by the weight of the evidence that the acts complained of were without lawful authority, or that such acts were done and performed with an intent and design to injure and interfere with the orderly conduct of the business of said company, or that the acts of the defendants have prevented the operation of its plant, or that said acts were done without any authority and direction of the board of directors of said company. While the plaintiff offered evidence in support of the above allegations contained in its bill, the proofs disclose a substantial dispute regarding the same.

On the contrary, it appears, both from the plaintiff's witnesses and from defendants' witnesses, that the root of the trouble was a dispute which arose at the annual meeting of the stockholders of said company on Jan. 25, 1923, as to whether Messrs. Wallace, Lloyd, Cummins, Wagon and Weitz were legally chosen directors of the said company, or whether Messrs. Prothero, Rathgeb, Duncan and Weitz were legally elected as such directors.

For convenience, the first group claiming to have been chosen directors at said meeting may be designated as the Wallace faction, and the second group as the Taylor faction.

The Wallace faction, claiming to be the legally chosen directors of the American Foundry and Pipe Company, caused this bill to be filed, naming the American Foundry and Pipe Company as plaintiff and certain members of the Taylor faction as defendants.

It is undisputed that at the annual meeting of stockholders, held Jan. 25, 1923, there were 1522 shares of the capital stock of said company outstanding; that of such stock, the Wallace faction controlled 645 shares, the right to vote which was uncontested; and the Taylor faction controlled 746 shares, the right to vote which was uncontested. The right to vote the remaining 131 shares was claimed by both factions. L. C. Walkinshaw claimed the right to vote two shares which stood in the name of Susan M. Wallace, and A. H. Lloyd claimed the right to vote two other shares which stood in the name of Susan M. Wallace. William Wallace claimed the right to vote 127 shares of stock which had been sold by him in June, 1922, to J. C. Taylor. Said Taylor had transferred the said 127 shares of stock by the issue of new certificates as follows: To J. C. Taylor, 27 shares; to Andrew Rathgeb, 25 shares; to J. R. Duncan, 25 shares; to George Weitz, 25 shares; to H. N. Prothero, 25 shares.

The above named transferees of said 127 shares of stock claimed the right to vote the same at said stockholders' meeting. The Wallace faction objected to such voting of these shares, alleging that the original certificate for said 127 shares issued by Wallace to Taylor had not been surrendered to the cor-

poration, although the same had been divided and new certificates issued as aforesaid to Taylor, Rathgeb, Duncan, Weitz and Prothero. Objection was also made because it was alleged that the legally chosen treasurer of said company had not countersigned such stock certificates.

At said stockholders' meeting in January, 1923, the Wallace faction attempted to amend the by-laws by reducing the number of directors from seven to five. No previous notice had been given the stockholders that such amendment would be attempted. A dispute having arisen, chiefly as to the right of the rival factions to vote the said 127 shares of stock, the Wallace faction withdrew from the office of the corporation where the stockholders had assembled pursuant to previous notice, and held a meeting of their own in the carpenter-shop located upon another portion of the company's property.

The adherents of the Taylor faction remained at the original place of meeting and proceeded to elect four directors, viz., Rathgeb, Prothero, Duncan and Weitz. At this election the 746 uncontested shares were voted for the four persons named as directors. The said 127 shares of stock were also voted in the same election. After this election, the directors thus named notified William Wallace that he was discharged as general manager of said company. Likewise, the Wallace faction at its meeting in the carpenter-shop voted the 645 shares admittedly controlled by it, and William Wallace also voted the 127 shares which he had sold in June, 1922, to J. C. Taylor. At said meeting the Wallace faction thereafter amended the by-laws of the company by reducing the number of directors from seven to five.

"A change in the by-laws of a corporation increasing the number of directors cannot be made at a regular or annual meeting of the stockholders, in the absence of notice previously given of the change contemplated:" Bagley *v.* Reno Oil Co., 201 Pa. 78.

The plaintiff's contention that the persons named by the Wallace faction were legally chosen as directors of the plaintiff company is not sustained by the weight of the evidence. Whether such directors were legally chosen depends upon disputed matters of fact.

While there was some disorder at said stockholders' meeting, owing to a dispute as to the right to vote certain shares of stock, there was in fact no violence offered or threatened toward any person. It does not satisfactorily appear from the evidence that the Wallace faction had cause to withdraw from the regular meeting of stockholders.

"The right of voting stock is inseparable from the right of ownership. The one follows as a sequence from the other, and the right to vote cannot be separated from that ownership without the consent of the legal owner:" Tunis *v.* H. M. & F. P. R. Co., 30 W. N. C. 96. "The right of voting stock at corporate elections is an incident of ownership, to be exercised, of course, in the mode and under the restrictions prescribed by the charter and by-laws; but, nevertheless, a part of a stockholder's property inherent in him by virtue of his title:" Com. ex rel. Eberhardt *v.* Dalzell, 152 Pa. 217, 220.

"If a corporate meeting is once organized and all parties have participated, no person or faction can then, by refusing to vote or by withstanding, thereby defeat the organization or render the subsequent proceedings invalid.

"The stockholders who attend the meeting and then without cause voluntarily withdraw are in no better position than those who voluntarily absent themselves in the first instance.

"The duty of holding an annual election of a corporation is imposed by statute, and the time and place for holding it are fixed by the by-laws. The duty as to the time and place of holding the election is quite as imperative

4 D. & C.

as the provision relating to the amount of stock necessary to constitute a quorum.

"Even a majority of the stockholders of a corporation cannot capriciously withdraw, after a corporate meeting is legally organized, for the very purpose of breaking a quorum, and then ask the courts for relief on the ground that a quorum was not present when the act complained of was done. Where there is a legally constituted meeting, the acts of a majority of those present are the acts of the corporation, though such majority is less than a majority of the total number of stockholders or shares:" Com. *v.* Vandegrift, 232 Pa. 53.

"A meeting properly constituted cannot be deprived of the right to transact the business for which it is called by the refusal of certain members present to participate therein or by their capricious withdrawal therefrom.

"A slight disturbance at a corporate meeting, although it may alarm a few of the timid, is not sufficient to set aside an election. To do so, it must clearly appear that there was such a display of force as ought to have intimidated men of ordinary firmness:" Stryjewski *v.* Panfil, 269 Pa. 568.

Thus, it appears that the present proceeding is in substance a bill to compel the surrender of the property of a corporation by the defendants to the plaintiff. It also appears that the real question in controversy is the validity of the selection of some of the defendants as officers of the corporation, and the validity of the election of certain other persons as such directors.

What we have said touching the merits of the rival claims of the persons who claim to have been chosen directors of the plaintiff corporation is not to be construed as a decision of their respective rights to hold such offices. The court does, however, decide that the title of the rival claimants to such offices is based upon facts about which there is a substantial dispute, and, therefore, that a court of equity has no jurisdiction to decide the controversy.

"A bill in equity to compel the surrender of the property of a corporation cannot be sustained where it appears that the real question in controversy is the validity of the election of the defendants as officers of the corporation. In such a case, *quo warranto* is the appropriate remedy:" Bedford Springs Co. *v.* McMeen, 161 Pa. 639.

The power of supervision and control of corporations conferred by the Act of June 14, 1836, P. L. 621, upon courts of equity will be used to supervise and control corporate elections, where it is shown in advance that by reason of fraud, violence or other unlawful means, a fair and honest election cannot be held, but it will not be exercised to set aside an election regularly held.

Where a corporate election is held at the proper place and the appointed time, and the meeting is regular, quiet and orderly, the only way to contest the validity of the election is by a writ of *quo warranto*, as provided by the Act of June 14, 1836, P. L. 621.

In the light of the proofs offered at the hearing to continue the preliminary injunction, the real purpose of the plaintiff's bill is to have the court determine the validity of the election of certain persons who claim to have been chosen directors of the plaintiff company at the annual meeting of its stockholders held Jan. 25. 1923.

The averments in the plaintiff's bill that the defendants have prevented the plaintiff company from operating its plant are not sustained by the proofs. In fact, the evidence discloses an attempt by both factions to operate the plant, each claiming the right so to do by virtue of the result of the elections of directors at the stockholders' meeting, Jan. 25, 1923.

While it is true that the plaintiff's bill in terms alleges an interference on the part of the defendants with the management of the property of the com-

pany, yet the real controversy fundamental to all other questions raised in said bill is the validity of the election of certain of the defendants and others as directors of said company. If they were lawfully elected, they are entitled to the control and management of the property of the corporation, and cannot be interfered with in their efforts to so control and manage it. The question thus raised cannot be determined on a bill in equity, but must be adjudicated on a writ of *quo warranto* in a court of law and not in equity.

The general rule is that equity will not interfere by way of injunction in a contest involving the possession of property, except where the right of the complainant is clear, or is admitted, or has been adjudicated on the law side of the court. In the pending case the defendants do not admit the plaintiff's right. Indeed, the right of the Wallace faction to control the operation of the company is seriously disputed, and depends upon the adjudication of facts triable only in a court of law.

It follows that the preliminary injunction heretofore granted must be dissolved.

*Decree.*

And now, March 23, 1923, this cause came on to be further heard upon plaintiff's motion to continue, and defendants' motion to dissolve, the preliminary injunction heretofore granted, and after hearing testimony in behalf of both parties, and after argument of counsel, and upon due consideration, the preliminary injunction heretofore granted is dissolved.

From William S. Rial, Greensburg, Pa.

NOTE.—See Tunis *v.* Hestonville, etc., R. R. Co., 149 Pa. 70; Gowen's Appeal, 10 W. N. C. 85.