ERIE LIGHTING COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59568. Promulgated April 20, 1937.

*Charles M. Trammell, Esq., Francis J. Sweeney, Esq.,* and *Bradford S. Magill, Esq.,* for the petitioner.

*Chester A. Gwinn, Esq.,* and *Charles E. Lowery, Esq.,* for the respondent.

OPINION.

DISNEY: The deficiencies involved are income taxes in the amounts of $74,814.83 and $60,464.59 for the calendar year 1927 and for the taxable period beginning January 1 and ending October 31, 1928, respectively.

The facts herein are set forth in a stipulation of facts filed with the Board, which we adopt as our findings of fact without express repetition here, except so far as necessary for discussion of the case.

Petitioner, a Pennsylvania corporation, had outstanding during the taxable years both preferred and common stock without par value. The holders of preferred stock were entitled at all times to full voting power, except that they had no power to vote the preferred stock at any election for directors, unless the dividends on the preferred shares for two quarterly periods, whether consecutive or not, should remain unpaid, in case of which default preferred stock could be voted even in election of directors. Such default in preferred dividends had not existed for two quarterly periods during the taxable years in question here. The preferred stock carried a right to $2 per share per annum, payable quarterly. After the payment thereof, common stock carried a right to $2 per share per annum, and all additional distribution of surplus or net profits as dividends was distributable at the same rate per share per annum to holders of stock of both classes. Upon any liquidation or distribution of the capital of the corporation the preferred stock carried a right to $35 per share in addition to all unpaid dividends accumulated and accrued thereon, whether or not there was any surplus or net profits, after which any property remaining was to be distributed ratably among the holders of common shares.

At all times material all of the petitioner's common stock was owned by the Pennsylvania Electric Co. of Pennsylvania and a substantial amount of the preferred stock was owned by outside interests.

The only question for decision is the right of the petitioner to be affiliated with the Pennsylvania Electric Co. of Pennsylvania. The parties are in agreement that the issue turns upon whether the preferred stock of petitioner is "nonvoting stock which is limited and preferred as to dividends" as provided by section 240 (d) of the

Revenue Act of 1926 [1] and section 142 (c) of the Revenue Act of 1928, which is identical with section 240 (d) of the 1926 Act, so far as herein material.

The general rule on this question is well stated in Fletcher on Corporations, vol. 5, par. 2027, p. 107, as follows:

In the absence of express charter or statutory provision to the contrary, the general rule is that every member of a corporation not having a capital stock, and every legal owner of shares in a stock corporation, has a right to be present and vote at all corporate meetings * * *.

Among the authorities cited for the above statement is *Commonwealth ex rel Eberhardt* v. *Dalzell*, 152 Pa. St. 217; 25 Atl. 535, from Pennsylvania, the situs of the corporation here at hand.

The preferred stock was entitled "at all times to full voting power" except as to participation in election of directors. Does such exception constitute a designation that the preferred stock is not voting stock within the purview of the revenue acts in question? Petitioner is, therefore, faced with the necessity both of meeting the above statement as to the general rule being that stock is votable and of demonstrating that what is in terms only a partial limitation upon voting is effective to brand the stock as nonvoting stock, for the stock certificates specifically provide that, with the exception as to voting for directors, the stock carries full voting rights, and in the contingency of two quarterly dividends being passed, then the right to vote even in election of directors. The terms of the stock certificate, as set forth in the above statements of fact, do not designate such preferred stock as nonvoting. Petitioner seeks, however, so to interpret the language because of the view that voting stock includes only that which controls management of the corporation. A number of cases are cited seeking to bear out that contention. Most of them, however, do not involve the precise question here, nor assist in its determination.

There is nothing in the statutes controlling here that discloses Congressional intent to limit stock ownership essential for affiliation to stock having unlimited voting privileges. Affiliation is a privilege, and any doubt about the meaning of the provision must be decided against the taxpayer. *Commissioner* v. *Manus Muller & Co.*, 79 Fed. (2d) 19; certiorari denied, 296 U. S. 657.

Cases interpreting earlier revenue acts than the one here in question are not of great value in the solution of the present problem,

---

[1] SEC. 240. (d) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the stock of the other or others, or (2) if at least 95 per centum of the stock of two or more corporations is owned by the same interests. As used in this subdivision the term "stock" does not include nonvoting stock which is limited and preferred as to dividends. This subdivision shall be applicable to the determination of affiliation for the taxable year 1926 and each taxable year thereafter.

for it is obvious that there was an evolution of the statute on this question, resulting, in section 240 (d) of the Revenue Act of 1926 herein involved, in the use of the expression "stock" and its definition by exclusion of nonvoting stock limited and preferred as to dividends, whereas the 1924 statute had used the expression "voting stock", so that it is seen that in the 1926 Act there is a reversal of the previous situation. Under the 1926 Act, one seeking affiliation must show ownership of 95 percent of "stock", that is of all stock—with the designated exception set forth in the statute as to stock nonvoting and limited and preferred as to dividends. Acts earlier than 1924 did not specify a percentage, and were based upon the idea of ownership or control of substantially all of the stock. Thus, a clear distinction is seen in the treatment which must be accorded the 1926 Act and previous acts, and in the burden upon the one seeking to establish affiliation. Of course those citations based upon the uncontroverted premise either of voting stock or of nonvoting stock offer no assistance here where the question is whether the particular stock is voting or nonvoting stock; nor can it be said that those cases, interpreting the statutes at a time when the language used and primary question involved control, are authority herein. Thus, *Commissioner* v. *Shillito Realty Co.*, 39 Fed. (2d) 830, involving the Act of 1918, was concerned with the question of control. All stock, both preferred and common, had full voting power, so that it is apparent that the question was not one of right to vote, but of ability to control. The court considered the fact that the preferred stock was hedged with limitations, making it ineffective for any control or domination, had an annual fixed dividend of 6 percent, was redeemable after 1924 at $105 per share, was payable in full on liquidation, and bore no burden of taxation, and concluded that its redeemability gave it the color of indebtedness. There is no feature of redeemability in the preferred stock involved in the instant case. We think the *Shillito Realty Co.* case affords little assistance herein. Indeed, it is questionable whether *Shillito Realty Co.* can now be regarded as authority since *Handy & Harman* v. *Burnet*, 284 U. S. 136, considering the emphasis which the latter case placed upon the thought that control alone is not sufficient for affiliation purposes.

*Wurlitzer Co.* v. *Commissioner*, 81 Fed. (2d) 971, only decides that the Constitution and the Supreme Court of Illinois forbid the denial of voting rights to preferred stockholders and that therefore in that state preferred stock is voting stock. We discern in this no assistance in the solution of the present problem, which is, of course, simply one of interpreting the meaning of the language in the stock certificate of the petitioner corporation. We think the

*ratio decidendi* in that case does not turn upon or stress the right to vote for directors as contended by petitioner, but, as stated in the opinion, "The actual controversy here is whether these preferred shares fall in the category of voting or nonvoting stock." The statute involved was section 141 (d) of the Revenue Act of 1928, identical so far as material here, with section 240 (d) of the Revenue Act of 1926. As we view it, therefore, the decision merely holds that under the Act of 1928 voting stock must be included in the 95 percent required for affiliation—and the case consequently is no authority whatever here.

The present case, therefore, seems *res integra* on the decisive question involved. Starting with the general idea above expressed that corporate stock is ordinarily voting stock, we examine the language involved in the instant case. The expression of the stock certificate is that the holders of preference shares shall be entitled at all times to full voting power, except as limited with regard to election of directors. The matter of election of directors is specifically an exception. To say that such exception nullifies altogether the language of the first clause of the sentence is to do plain violence to logic and ordinary rules of construction and interpretation. Sufficient reason for so doing can not be imported because of general theories as to voting stock being limited to stock having management or control. The statute does not so provide and we can not, if we would, legislate here. The language seems as plain as English could be made. The salient thought is emphasized: that holders of preference shares are entitled "to full voting power"; they are entitled thereto "at all times", with a stated exception; then the thought is, in a way, put in the converse, when it is stated that holders of preference shares "shall have no power to vote the same at any election for directors"—unless dividends have been passed. This, in line with the other language just above considered, connotes that otherwise they do have power to vote such stock. Even as to election of directors there is a further exception and bestowal of power to vote in case of default in dividends. However, during the period here in question this contingency had not occurred, and therefore can not be considered. *Vermont Hydro-Electric Corporation*, 29 B. T. A. 1006; *Pantlind Hotel Co.*, 23 B. T. A. 1207. The terms of the stock certificate having bestowed voting power on preferred stock with a definite exception, the exception can not be allowed to override a general provision so pointed as the one here in question.

We think further that it can not be said that the preferred stock is deprived of all powers of control or management, as argued by petitioner. It could by its vote affect and effect action in various ways, such as in regard to increase of stock, number of directors, time of

election, place of principal office, time of stockholders' meetings, increase of capital indebtedness, reduction of capital stock, consent to manager, approval of investment of surplus, and any other subject, except only the election of directors. We find it impossible to conclude that stock, voting upon all of these subjects, has no voice in the management or control of the corporation, and we think that the term "management" should be construed to include the general direction of policies and disposition of the corporation's affairs as a whole, and not merely the executive functions entrusted to directors. Stock having a voice by vote in management within such broader view can not, we think, be considered as nonvoting stock.

We conclude further that the preferred stock here in question was not both "limited and preferred as to dividends." Preference alone is not effective. The statute provides that to meet the definition of stock which is not included in that term, it must be both "limited and preferred" as to "dividends." It was preferred as to dividends, but carried no limitations as to dividends which were not common to both the common and preferred stock. If on a parity with the common stock as to limitation of dividends, obviously this stock can not be called limited in that regard. Examination of the facts discloses that after preferred stock had received a dividend of $2 per share per annum, the common stock should then receive $2 per share per annum, after which common and preferred stock are equal as to dividends. So far, certainly, as the $2 per share per annum is concerned, this is a preference, and not a limitation on dividends. The common stock, then receiving an equal amount, to wit, the next $2 per share per annum, obviously assumes a place of equality with the preferred stock, and the apparent limitations upon the two classes of stock are equalized—which means that there is no limitation upon the preferred stock. Thereafter, each class of stock participates equally in all "additional distribution of surplus or net profits as dividends." The record does not show what actual dividends were received during the periods here involved. It is true that the preferred stock is entitled to receive only $35 per share "upon any liquidation or distribution of the capital of the said corporation", but the record does not indicate that there was any liquidation or distribution of capital within the taxable periods here involved, so that this question too can not here be considered, under *Vermont Hydro-Electric Corporation, supra,* and *Pantlind Hotel Co., supra.* We therefore discern no limitation upon dividends in the preferred stock herein.

We hold, therefore, that the stock in question here was not "nonvoting stock which is limited and preferred as to dividends", that there was therefore no right to affiliation, and that, in accordance with the stipulations entered into between the parties, the amounts

of the deficiences herein are as follows: for the taxable year 1927, $56,266.30; for the period from January 1 to October 31, 1928, $37,678.01.

Reviewed by the Board.

> *Decision, therefore, will be entered for the respondent in the above amounts.*

HILL, concurring in the result: To constitute affiliation of two or more corporations, the Revenue Acts of 1926 and 1928, in sections 240 (d) and 142 (c), respectively, require the ownership by one corporation of at least 95 per centum of the "stock" of the other or others, or the ownership by the same interests of the same per centum of the "stock" of all the corporations; and it is further provided that the term "stock" as used in the statutes "does not include nonvoting stock which is limited and preferred as to dividends."

The majority opinion holds that the "preference stock" involved in this proceeding was not "nonvoting" but voting stock, which was preferred, but not limited, as to dividends. I agree that this stock was preferred, but not limited, as to dividends, but in my opinion the conclusion reached that it was not "nonvoting" but voting stock, within the purview of the statutes, is erroneous.

The certificates of preference stock provided that the holders should have no power to vote the same at any election for directors, unless the dividends on such shares for two quarterly periods remained unpaid; and that otherwise the holders of preference shares should be entitled at all times to full voting power. During the taxable periods here involved, the dividends payable on the preference shares were not in default, and hence the provision conferring power to vote at an election for directors in event of default is beside the point. It is the situation actually existing which is determinative. *Vermont Hydro-Electric Corporation*, 29 B. T. A. 1006, 1011.

Under the terms of issuance, it appears that the holders of preference stock, while they had no part in the management of the corporation and its affairs through the selection of directors, could vote to increase or decrease the capital stock, the number of directors, time of election, place of principal office, time of stockholders' meeting, approval of investment of surplus, and other like things. Because of these matters the majority concludes that the preference stock was "voting stock" within the meaning of the revenue acts.

Solution of the question presented requires interpretation of the statutory provisions. Obviously, the same stock could not be both voting stock and nonvoting stock at the same time. The one is the opposite of the other. Yet, the stock in controversy was in some

respects voting stock and in others nonvoting stock. How then is it to be classified? Because it could be voted in the determination of such minor matters as above referred to, is it to be treated as "voting stock" and placed in the same category as the common stock, which, because of its unrestricted voting power, was undeniably in control of the corporation? Where might such a construction of the statutes lead us?

Let us suppose that this preference stock carried only the right to vote on the question of changing the place of the corporation's principal office, in the event such a proposal should ever be made. Having such voting power, could it be properly classified as "voting stock" for the purpose of determining affiliation? If not, where is the line to be drawn? Such reasoning, it seems to me, would inevitably lead to incongruous and absurd results, never contemplated by the revenue acts.

The Revenue Acts of 1918 and 1921 provided for the affiliation of corporations upon the basis of the ownership or control of substantially all the stock of one or more corporations by another, or the ownership or control of substantially all the stock of two or more corporations by the same interests. The Commissioner interpreted these provisions as referring to "voting stock." See article 633 of Regulations 45 and 62. In the Revenue Act of 1924, section 240 (c), the term "voting stock" was substituted for the word "stock" used in the previous acts, thus embodying in the later act the Commissioner's prior interpretation. The Revenue Acts of 1926 and 1928, in providing the requirements for affiliation, used the term "stock", and then defined that term as not including "nonvoting stock which is limited and preferred as to dividends." It seems clear that the requirement, running through all the revenue acts from 1918 to 1928, respecting the ownership of corporate "stock", refers to "voting stock."

It seems equally clear to me, from a consideration of the legislative history of the various enactments and the evident purpose of the affiliation provisions, that "voting stock" means only that stock which, by virtue of the right to vote at the election of directors, exercises control over the management of the corporation and its business affairs.

The purposes to be served by the filing of consolidated returns of affiliated corporations are aptly stated in article 631 of respondent's Regulations 45 and 62, and may be summarized as based upon the principle of levying the tax according to the true net income of a single business enterprise, even though the business is operated through more than one corporation. In some cases the filing of separate returns by affiliated corporations might result in tax evasion, through an arbitrary shifting of income; and, in other cases,

without a consolidated return excessive taxation might be imposed as a result of purely artificial conditions existing between corporations within a controlled group.

It seems too obvious for argument that the term "controlled group", when referring to corporations, implies an ownership of that stock of each member which carries the right to vote in the selection of directors, who, together with the officers elected by the directors, control the operation and management of the corporations and their respective businesses.

The ownership of the preference stock involved in this proceeding had nothing whatever to do with constituting the corporations "a controlled group." Control, as that term is ordinarily understood, during the taxable years vested exclusively in the holder of the common stock. The fact that the preference stock carried the right to vote on minor matters in no material respect affecting the control and management of the corporation, does not characterize it as "voting stock" within the meaning of the taxing acts.

"Voting stock" may very properly be termed "management stock." Thompson on Corporations, 3d ed., vol. 5, sec. 3449.

"* * * Congress had in mind voting stock only, or such stock as carried control by one corporation over its affiliated corporation. Unless this was the purpose and meaning of Congress, the statute is * * * wholly incapable of enforcement." *In re Temtor Corn & Fruit Produce Co.*, 299 Fed. 326.

Preferred stock, which normally carried voting power coequally with the common stock but which under agreement on its issuance was so circumscribed and hedged in by restrictions and limitations as to nullify that power as a practical matter, is not to be treated as "voting stock." *Detour Dock Co.*, 22 B. T. A. 925.

The term "stock" as used in the affiliation provisions of the statute embraces preferred stock with voting rights which enable the holders to participate in the direction of the undertaking. *Atlantic City Electric Co.* v. *Commissioner*, 288 U. S. 152.

"We think the term 'stock', as used in the statute, is clearly intended to mean stock with a potential voting power which, if asserted, will be effective in the management or control of the corporation." *Commissioner* v. *Shillito Realty Co.*, 39 Fed. (2d) 830.

Preferred stock having no voting power can not be a means of controlling the corporation, and is not to be considered in determining affiliation, *Commissioner* v. *City Button Works*, 49 Fed. (2d) 705, but preferred stock which carries the legal right to vote for the election of directors is not "nonvoting" but voting stock, and is not to be excluded in determining affiliation, *Wurlitzer Co.* v. *Commissioner*, 81 Fed. (2d) 971.

In *Pantlind Hotel Co.*, 23 B. T. A. 1207, the Board held that preferred stock was voting stock and not to be excluded in determining affiliation, where the holders of the preferred stock acquired the right to vote during the taxable year equally with the holders of the common stock, share and share alike, in the election of the directors and control of the corporation, because of the fact that dividends due on the preferred stock remained unpaid. The case of *Vermont Hydro-Electric Corporation, supra,* is not in point on this question, since the holders of the preferred stock there involved were not entitled to vote on any matter during the taxable year.

For the reasons above indicated, I can reach no other conclusion than that the term "stock" or "voting stock" as used in the taxing statutes, including the Revenue Acts of 1926 and 1928, means stock which, by reason of its voting power, is effective in the management of the corporation and controls the conduct of its business affairs. Under this interpretation of the statutes, the preference stock involved in the instant case is "nonvoting" stock.

It does not necessarily follow, however, that because the preference stock in question was "nonvoting" that it is to be excluded in determining affiliation. The statute requires exclusion only of nonvoting stock which is (1) limited as to dividends, *and* (2) preferred as to dividends. The conditions are expressed conjunctively and not disjunctively. All the elements prescribed, therefore, must be present in order to exclude. *United States* v. *Field*, 255 U. S. 257.

That the stock in controversy was "preferred" as to dividends is conceded by all parties, but I think it is clear that it was *not* "limited" as to dividends, as concluded in the majority opinion. The holders of the preference shares were entitled to receive out of the surplus or net profits of the corporation quarterly cumulative dividends at the rate of $2 per share per annum before any dividends could be declared on any other stock; when the preferred dividends had been paid, the holders of common shares were then entitled to receive dividends of $2 per share per annum out of any remaining surplus or net profits, and all additional surplus or net profits became distributable as dividends at the same rate per share to the holders of the stock of both classes. Thus, the holders of the preference stock might have received a greater return by way of dividends than the holders of the common stock, but conceivably could not have received less.

The preference stock, therefore, was not limited as to dividends, and, although nonvoting, must be included with the voting common stock in determining the ownership of 95 per centum of the "stock" required for purposes of affiliation.

BLACK, LEECH, and HARRON concur in the above.