Christmas, Appellant, *v.* Kennedy et al.

Argued September 29, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*David H. H. Felix,* of *Felix & Felix,* for appellant.

*George C. Denniston,* with him *Samuel H. High,* for appellees.

OPINION BY STADTFELD, J., November 10, 1937:

L. J. Bordo was engaged in the steam valve and swing joint business prior to October, 1930, and at that time decided to go into partnership with Henry N. Christmas, who was to contribute $25,000 in cash to the partnership. Bordo was to contribute tools, dies, stock in trade, and patterns for the manufacture of steam valves and swing joints. Christmas and Bordo, accompanied by Curtis M. Kennedy, an acquaintance of Bordo, visited Samuel H. High, Esq., of the Montgomery County Bar, to get his advice. High was opposed to the formation of the partnership and suggested a corporation. The parties agreed and were told that three incorporators would be necessary. Bordo, Christmas and Kennedy became the incorporators and later the stockholders—Bordo and Christmas received 249 shares each and Kennedy the remaining 2. The parties agreed that no one should sell his stock unless the other two persons were first given an opportunity to buy it. Kennedy endorsed his certificate in blank and it, with the unendorsed certificates of Bordo and Christmas, remained in the company's safe.

Subsequently, differences of opinion arose and Kennedy voted his two shares of stock with Bordo. Christmas filed a Bill in Equity to compel the transfer to him of one of the two shares standing in Kennedy's name, and to restrain him from voting the stock or transferring it to anyone else, claiming that High had advised them that three stockholders were necessary and that for this reason alone he had agreed to the

issuance of one share to Kennedy. At the trial, Christmas testified first and then proceeded to call High, Kennedy and Bordo as his own witnesses. The respondents did not offer any testimony.

The Chancellor in his adjudication decided that the plaintiff was not entitled to the remedies prayed for and dismissed the bill, whereupon exceptions were filed by plaintiff and this appeal followed.

The Chancellor made the following Findings of Fact: "1. In the latter part of the year 1930 the plaintiff Henry N. Christmas and the defendant L. J. Bordo agreed to enter into business together for the manufacture of steam valves and swing joints and sought the advice of one Samuel H. High, Esq. upon the legal questions involved. 2. The said Samuel H. High, Esq. advised that the business should be incorporated and that three incorporators would be necessary, whereupon the defendant C. M. Kennedy was procured. 3. Pursuant to the aforesaid agreement and advice the defendant corporation, the L. J. Bordo Company, Inc., was formed on October 29, 1930 with Henry N. Christmas, L. J. Bordo and C. M. Kennedy as incorporators. 4. To the corporation L. J. Bordo contributed the stock in trade, good will, etc. of a going concern previously engaged in the manufacture and sale of steam valves and swing joints, Henry N. Christmas contributed $25,000 in cash and C. M. Kennedy contributed nothing. 5. L. J. Bordo became president, Henry N. Christmas vice-president and C. M. Kennedy secretary and treasurer of the corporation. 6. Three certificates of shares of stock in the corporation were duly prepared and executed, one for 249 shares to L. J. Bordo, one for 249 shares to H. N. Christmas and one for 2 shares to C. M. Kennedy. 7. Said certificates were not, at the time they were issued, detached from the stubs in the stock certificate book but were placed, in the book, in a safe in the office of the corporation. 8. The certificate issued to C. M. Kennedy was at that time or shortly

thereafter endorsed by him in blank, but was never transferred to another on the books. 9. C. M. Kennedy was an accountant and bookkeeper and had previously been employed as such in a business similar to that for which this corporation was formed. He was employed by the corporation as bookkeeper at $40 per week but no other definite arrangement was made as to his sharing in the profits or losses of the business. 10. Subsequently differences of opinion arose between H. N. Christmas and L. J. Bordo concerning the management of the business and in voting thereon C. M. Kennedy voted his shares with L. J. Bordo. 11. H. N. Christmas, claiming there had been an agreement among the parties that C. M. Kennedy was never to vote his shares but was to hold one share in trust for Christmas and the other in trust for Bordo, brought this bill in equity to restrain C. M. Kennedy from voting his stock and to compel the transfer of one of said shares to himself, H. N. Christmas. 12. After said differences of opinion had arisen among the shareholders the certificates of stock aforementioned were detached from the stub book by the three persons in whose names they were issued. 13. At the time of the formation of the corporation the three shareholders entered into an agreement that no one of them should sell or transfer his shares without first giving the others an opportunity to purchase them."

From these Findings, the Chancellor made the following Conclusions of Law: "1. The defendant C. M. Kennedy is, and at all times since the formation of the corporation has been, the owner of two shares of capital stock therein. 2. As such owner he is and has been entitled to vote such shares at all meetings of the shareholders of the corporation. 3. He is not, and has not been, by trust or agreement or in any other manner, in any way limited or restricted in his right to vote such shares according to his pleasure. 4. The bill must be dismissed."

The position of appellant is based upon the assump-

tion that Kennedy is not and never was the owner of two shares of the common stock of the corporation. If this assumption is wrong, then the whole structure of the bill necessarily falls.

An examination of the testimony tends to establish that Kennedy agreed to become associated with the corporation and give his services, and that this was the consideration for the issuance to him of the stock by Bordo and Christmas.

Bordo testified in part as follows: "Q. You gave it (stock) to him (Kennedy)? A. (Bordo) I gave him one share. Q. And Christmas gave him one? A. For his services and experience, yes sir." Samuel H. High, who acted as counsel for the incorporators, testified as follows: "Q. Did he (Kennedy) put anything into the joint enterprise? A. No money, but his services were desired by the company." Curtis M. Kennedy testified: "Q. Mr. Kennedy, did you contribute anything at all to this corporation? A. My knowledge and the services I had in this line of business." Christmas does not deny that the stock was agreed to be issued to Kennedy. In fact, he testified: "We each agreed to give Mr. Kennedy one share of stock......"

This testimony certainly supports the conclusion that Kennedy was at all times the owner of the two shares of stock issued to him, and as such was and is entitled to exercise the rights of ownership therein and connected therewith, unless limited by some agreement between the parties.

Christmas, the complainant, asserts as ground for relief that he was incorrectly advised that three *stockholders* were required to form the corporation, and on direct examination stated that he had been so advised by Mr. High, counsel for the incorporators, but on cross-examination, he stated that he didn't know whether Mr. High said *"three stockholders or three incorporators."* His contention that he agreed to the issuance of a share of stock to Kennedy because of

"misleading" legal information fails. He also asserts that he agreed to the granting of the shares to Kennedy only on the understanding that they were to be "non-participating," by which he apparently means non-voting, non-profit sharing and not representative of any interest in the corporation. Mr. High, counsel for the incorporators, testified that he told Mr. Christmas and Mr. Bordo not that three *stockholders* were necessary, but three *incorporators,* and that he also pointed out to them the possibility of a deadlock in the affairs of the business if each held half of the stock, and may have suggested a third share held as a means of avoiding that difficulty. The conclusion that Kennedy was to vote the shares of stock issued to him necessarily follows. The certificates of stock contain no limitation of these rights.

Appellant's bill is based on the assumption that, though he knew all the facts, he made a mistake of law. This is no ground for equitable relief: *Kennedy's Estate,* 321 Pa. 225, 183 A. 798.

Prima facie, however, the owner of the stock has the voting right as an incident of such ownership. As stated by Mr. Justice MITCHELL in *Commonwealth ex rel Eberhardt v. Dalzell,* 152 Pa. 217, 220, 25 A. 535: "The right of voting stock at corporate elections is an incident of ownership, to be exercised, of course, in the mode and under the restrictions prescribed by the charter and by-laws; but nevertheless a part of the stockholder's property, inherent in him by virtue of his title. As said by the present Chief Justice in *Tunis v. Hestonville R. W. Co.,* 30 W. N. 96, 'the right of voting stock is inseparable from the right of ownership. The one follows as a sequence from the other, and the right to vote cannot be separated from the ownership without the consent of the legal owner.'"

Quoting from the opinion of the Chancellor: "Nevertheless, Christmas' testimony, much of which was vague and contradictory, failed to convince me of any agree-

ment that Kennedy was not to vote the shares, and Bordo called as a witness by the plaintiff, testified that it was expressly agreed that Kennedy should act as umpire in case of dispute."

The certificate of Kennedy, endorsed in blank, was never transferred on the books and remained in a safe in the office of the corporation. The other certificates, though not endorsed, were in the same place. The endorsement of Kennedy's certificate was explained as a precaution against Kennedy's transferring the shares to an outsider, as it had been agreed by all the parties that none would sell or transfer his shares without first giving the others an opportunity to buy.

We agree with the conclusion of the Chancellor that the voting rights appurtenant by operation of law to the shares held by Kennedy are not and never have been limited by any trust, agreement or other circumstance and that the bill was properly dismissed.

The decree of the lower court is affirmed and the appeal dismissed at costs of appellant.