Edson, Appellant, *v.* Norristown-Penn Trust
Company, Trustee, et al.

Argued April 15, 1948. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Henry S. Drinker*, with him *Francis Hopkinson, Leslie M. Swope, Frederick E. S. Morrison* and *Roland Fleer*, for appellant.

*Franklin L. Wright* and *Aaron S. Swartz, Jr.*, with them *Federico F. Mauck, Edward M. Hawes, Edward B. Duffy, Morris Gerber, Henry Stuckert Miller; High, Swartz, Flynn & Roberts* and *Wright, Mauck, Hawes & Forrest*, for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 24, 1948:

Katharine S. Edson, appellant, filed her bill in equity to secure, in the alternative, (1) termination of an irrevocable deed of trust of which she was settlor, (2) removal of trustee, or (3) determination that powers given to trustee as regards the exercise of voting rights were void as being against public policy. This appeal is from the decree of the court below sustaining preliminary objections to the bill.

Adam Scheidt in 1922 was the owner of all the capital stock of the Adam Scheidt Brewing Company (hereinafter called company), Norristown, Pennsylvania, which consisted of 12,000 shares. In that year he gave to appellant, his daughter, 1700 shares of said stock, and an identical number to his wife, to each of his three sons, and to his other daughter. By an irrevocable deed of trust dated October 2, 1930, appellant transferred her 1700 shares to the Norristown-Penn Trust Company (hereinafter called trustee), upon limitations not now relevant.[1] On the same date, Adam Scheidt, his wife and his other daughter, each executed three separate irrevocable deeds of trust similar to the one in this case. All four deeds of trust contained the identical clause relating to voting trustee shares by proxy although they differed as to the future estates created. the deed of trust provided, *inter alia*, that "it is desired that the present efficient family control and management of the said Corporation be continued and safeguarded to and for the members of the family." The clause, which is the subject of the present controversy, challenged as being contrary to public policy, provides: "At any general or special meeting of the said Brewing Company, the Trustee *shall,* in proper time, form and manner deliver to and deposit with the then President of the Company, or if the office be vacant for any reason or if the President is by reason of absence, illness, or any other cause unable to be present at, or does not attend such meeting, then to the existing Vice President of the Company, a proxy, or instrument of the nature thereof, complying with the legal requirements therefor, fully authorizing the President, or the Vice

---

[1] In the court below, appellant contended that the future estates created violated the rule against perpetuities. The court below concluded that the limitations were valid. Appellant, in her brief, now states she "is no longer attempting to terminate the trust on the ground that it violates the rule against perpetuities, and therefore the question is moot as to this phase of the case."

President, if such proxy be given to him for a reason stated, to vote all the shares so as aforesaid entrusted as fully and effectually as the Trustee itself could do, if present."

Adam Scheidt was president of the company until his death on October 17, 1933, and voted the proxies at all stockholders' meetings. Upon his death, his son, Karl F. Scheidt, was elected president, which position he continues to hold. He has voted the proxies of the trust at the stockholders' meetings for the last 15 years. Three hundred fifty shares of stock were added to this trust upon the death of Adam Scheidt in 1933, and 340 shares of stock were added upon the death of Rosa I. Scheidt. At all meetings of the stockholders of the company, the trustee turned over to the president of the company an unqualified proxy to vote the stock held by it. During all of this time, a period of 17 years, appellant made no complaint as regards legality of the proxy provision or the voting of the proxy by the president of the company.

On April 25, 1947, appellant filed her bill in equity against trustee and others,[2] averring, *inter alia*, that the trustee has improperly performed its duties by delivering an unrestricted proxy to the president of the company, contrary to the wishes of appellant; that the president of the company had exercised such voting rights for his own individual aggrandizement and adversely to the interests of the settlor, appellant; that the proxy provision "is contrary to public policy . . . and is null and void and of no effect"; and, that the president, through the proxy voting privilege, had the power to mismanage the business of the company to the detriment of the appellant as settlor and beneficiary under the deed of trust. Preliminary objections were filed on behalf of the trustee and of several of the de-

[2] Joined as defendants were appellant's three brothers, Adam J. Scheidt, Karl F. Scheidt, and L. Paul Scheidt, her sister, Helen S. Rambo, together with issue of these collaterals.

fendants asserting that (1) the proxy clause is legal and valid; (2) appellant is guilty of laches; and (3) the alleged charges as to mismanagement are cognizable only by a stockholder's bill. Appellant concedes the present proceeding is not by way of a stockholder's bill.[3]

The court below concluded that the proxy clause was valid, that appellant was guilty of laches and dismissed the bill. After petition for rehearing, answer thereto and argument thereon, the court entered the final decree now complained of.

Two basic questions are presented: (1) validity of the proxy provision, and (2) the intention of settlor. Appellant contends that the clause is illegal and contrary to public policy in that (1) it attempts to separate the franchise to vote from ownership of the stock and deprives the trust of a responsible trustee; (2) Section 504 of the Corporation Code of 1933, 15 PS Section 2852-504 is violated; and (3) the clause amounts to perpetual proxy. It is also asserted that "the only clear intent apparent on the face of the provision is to guarantee a quorum of all meetings of the stockholders" and not to lodge voting control in one person, namely, the president of the company.

The court below did not err in holding that the proxy clause in question was valid and binding and designed to effectuate a clearly expressed intention to keep management and control of a thriving, prosperous and growing enterprise within the immediate Scheidt family. That trustee could vote by proxy has been recognized in this Commonwealth: Cf. *Commonwealth ex rel. Eberhardt v. Dalzell*, 152 Pa. 217, 25 A. 535; Restatement, Trusts, Section 193; 2 Scott on Trusts, Section 193.1, page 1047. By the terms of a trust it may be provided that trustee shall vote as directed by settlor or by a beneficiary or by a third person.

---

[3] Neither the company nor its directors are joined as defendant.

Appellant never gave to trustee the right to vote the stock. Trustee never had such a complete and unqualified ownership of the stock. A holder of stock may qualify his ownership by directing that another vote for him, or may accept ownership with a condition that involves such consent.

Appellant's contention that the provision violates Sections 504-511 of the Business Corporation Law, supra, is without merit. The court below properly concluded that: "It is a sufficient answer to state that this Act was passed after the execution of the Deed of Trust and its provisions could not apply to this instrument." A trustee may vote stock either in person or by proxy. The Business Corporation Law never required a trustee to accompany a proxy with directions as to how it should be voted. Settlor directed trustee to give an unqualified proxy to the president of the company and required a current one to be used. This latter direction removes from consideration the alleged infirmity of a perpetual proxy.

The deed of trust evidences a dominant purpose on the part of settlor to perpetuate management and control of the company in members of the Scheidt family. This is further shown by consideration of the two other irrevocable trust agreements entered into between the same trustee and appellant's father and mother. Appellant used the mandatory word "shall" in directing how the stock comprising her trust should be voted. She now complains that trustee is violating this direction in the deed of trust. The court below very aptly said: "We see no reason why she should not be able to carry out this desire, by giving instructions to the trustee she had selected as to how the stock she was transferring to it, which was the entire corpus of the Trust Estate, should be voted. She so provided by using the mandatory word 'shall' and directed that the Trustee 'shall' deliver a proxy as directed." *Lafferty's Estate* 154 Pa. 430, 26 A. 388, a similar proceeding, upheld

validity of a proxy challenged on the ground that a separation of voting power and ownership was *contra bonos mores.*

Appellant's complaints that the president of the trustee is also a director of the company and that the president of the company is also a director of the trustee, that the present vice president is not a member of the Scheidt family, and that the president of the company has managed the company for his own interests to the detriment of settlor, appellant, are unsupported by any averments of fact. The averments cannot, therefore, afford any basis for termination. Nor are they sufficient to warrant removal of trustee. Significantly, there is an entire absence not only of allegations of mismanagement, but also that the business, credit or growth of the company has in any way suffered or is actually impaired by virtue of the arrangement complained of.

Decree affirmed, costs to be paid by appellant.